## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DOMINICAN REPUBLIC,

Petitioner,

     v.

MICHAEL ANTHONY LEE-CHIN,

Respondent.

No. 23-cv-3821-CKK-ZMF

## REPORT AND RECOMMENDATION

The Dominican Republic is a foreign state as defined under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603(a). Michael Anthony Lee-Chin is a dual citizen of Jamaica and Canada. *See* Pet. Vacate Arbitral Award ("Pet.") ¶ 2, ECF No. 1. The Dominican Republic filed Petition, seeking an order and judgment to vacate or, alternatively, modify the arbitral award rendered in *Michael Anthony Lee-Chin v. The Dominican Republic*, ICSID Case No. UNCT/18/3 pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10, 11. *See generally* Pet. Lee-Chin filed Cross-Petition, requesting the Court's confirmation, recognition, and enforcement of the award pursuant to 9 U.S.C. § 207. *See generally* Michael Anthony Lee-Chin's Mem. P. & A. Opp'n Pet. Vacate Arbitral Award ("Cross-Pet."), ECF No. 15. Respondent also requests leave to file a motion for attorneys' fees pursuant to the Court's inherent authority and Federal Rule of Civil Procedure 11. *See id.* at 43–45.

For reasons set forth herein, the Court recommends DENYING the Petition and GRANTING the Respondent's Cross Petition to confirm, recognize, and enforce the award while DENYING his request for leave to file a motion for attorneys' fees.

## I.    BACKGROUND

### A.    Legal Background

In 1998, the Caribbean Community ("CARICOM") and the Dominican Republic signed the Agreement Establishing the Free Trade Area ("Treaty"). *See* Pet., Ex. 1, Final Award ¶ 1, ECF No. 1-3. It provides, among other things, protections for qualifying investors of member states. *See* Pet., Ex. 5, Agreement Establishing the Free Trade Area Between the Caribbean Community and the Dominican Republic ("Treaty") 3–4, ECF No. 1-7. In particular, the Treaty protects investors who make investments in the Dominican Republic from expropriation, unfair and inequitable treatment, arbitrary and discriminatory measures, and breaches of contract. *See id.* at 84, 86. The Treaty provides dispute settlement procedures, beginning with a "written notification of a claim." *Id.* at 88. If the dispute is not resolved after three months, parties can, among other things, invoke international arbitration to resolve the dispute. *See id.* at 88. Consent is crucial in such proceedings. *See generally Primer on International Investment Treaties and Investor-State Dispute Settlement*, Columbia Center on Sustainable Investment (Dec. 2021), https://ccsi.columbia.edu/sites/default/files/content/docs/Primer%20on%20International%20Investment%20Treaties%20and%20Investor-State%20Dispute%20Settlement_12.19.21.pdf [https://perma.cc/2W8Z-EHQC].

The Federal Arbitration Act ("FAA") "provides for expedited judicial review to confirm, vacate, or modify" arbitral awards in the United States. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008). The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") is an international treaty that requires signatory countries to "recognize . . . and enforce" arbitral awards made in other signatory states. N.Y. Convention

Art. III. Sections 201–208 of the FAA codify the New York Convention, thereby establishing the framework for U.S. courts to enforce foreign arbitral awards.

      B.    <u>Factual Background</u>

          1.    *Facts Leading to Underlying Arbitration*

In 2007, the Municipality of Santo Domingo Norte ("ASDN") in the Dominican Republic initiated a bidding process to select a private operator to manage a landfill (the "Landfill"). *See* Pet. ¶ 10. Lajun Corporation, S.R.L. ("Lajun"), a Dominican company, submitted a bid in response. *See id.* ¶ 10.

On March 1, 2007, ASDN and Lajun entered into a Concession Agreement for the Landfill. *See* Final Award ¶ 82. Between 2007 and 2013, Lajun failed to fulfill its obligations under the agreement. *See id.* ¶ 90.

On June 26, 2013, Lee-Chin acquired an indirect 90% interest in both Lajun and the land on which the Landfill is located (the "Land").[1] *See id.* ¶ 85. Through 2017, ASDN and Lajun had multiple disputes about administration of the Landfill. *See, e.g.*, *id.* ¶¶ 89, 95.

On July 19, 2017, ASDN terminated the Concession Agreement. *See id.* ¶ 96. In August 2017, ASDN initiated administrative proceedings in the Dominican Republic, seeking to nullify the Concession Agreement and place the Landfill under judicial administration. *See id.* ¶ 98. On October 25, 2018, the administrative court declared the Concession Agreement void. *See id.* ¶ 103.

---

[1] The Dominican Republic alleges several "serious red flags of fraud" regarding Lee-Chin's investments in Lajun and the Land. Pet. ¶ 15. However, these allegations are irrelevant to the Court's analysis. *See infra* III.B.1.c.

2.    *The Underlying Arbitration*

On April 6, 2018, Lee-Chin initiated arbitration proceedings against the Dominican Republic under the Treaty. *See id.* ¶ 102. Respondent alleged breaches of the Treaty's obligations concerning (1) expropriation and (2) fair and equitable treatment ("FET") related to his investment in Lajun and the Land. *See id.* ¶ 100.

Respondent appointed Christian Leathley and Petitioner appointed Marcelo Kohen as arbitrators; both parties appointed Diego P. Fernández Arroyo as president. *See* Pet., Ex. 2, Partial Award Jurisdiction ("Partial Award") ¶ 1, ECF No. 1-4. The arbitral proceedings were bifurcated into two phases: an initial phase on jurisdiction; and a second phase addressing the merits and damages. *See* Final Award ¶ 106 & n.40.

a.    *The Majority's Decision on Jurisdiction*

On February 27 and 28, 2020, the arbitrators held a hearing on jurisdiction in Washington, D.C. *See* Partial Award ¶ 52. The majority held that it had jurisdiction under Article XIII of Annex III of the Treaty, which grants investors the "unilateral" right to initiate arbitration. *See id.* ¶ 126. The majority also determined that Article 3 of the 1976 Arbitration Rules of the United Nations Commission on International Trade Law (the "UNCITRAL Rules") applied by default under the Treaty. *See id.* ¶ 194. The majority further found that Lee-Chin qualified as an "investor" under the Treaty even though he had not made a direct investment in the Dominican Republic because the Treaty extended protections to indirect investments. *See id.* ¶¶ 208, 219. Lastly, the majority deferred ruling on the jurisdictional question of whether Lee-Chin had made qualifying investments in the Dominican Republic under the Treaty. *See* Final Award ¶¶ 136–37. Kohen dissented from the majority's decision.

b. *The Majority's Decision on Merits and Damages*

Between January 24 and 30, 2022, the Tribunal held a virtual hearing on the merits. *See id.* ¶ 65. On October 6, 2023, the majority issued a final award on the merits, with Kohen again dissenting. *See generally id.*

The majority determined that the termination of the Concession Agreement constituted an indirect creeping expropriation of Lajun's right to operate the Landfill in violation of the Treaty. *See id.* ¶ 360. The majority further held that the Dominican Republic breached its obligation of FET under the Treaty. *See id.* ¶ 453. However, the majority rejected Lee-Chin's claim that the Dominican Republic had expropriated the right to build and operate a waste-to-energy plant at the Landfill. *See id.* ¶ 353.

The majority awarded Lee-Chin $4,880,609 plus interest as damages for the FET claim and $38,709,481 plus interest for the expropriation claim, representing compensation for his 90% shareholding interest in Lajun. *See id.* ¶¶ 548, 591. The majority declined to award damages for the Land itself. *See id.* ¶ 564.

3. *Post-Award Procedures*

On November 6, 2023, the Dominican Republic applied for rectification of the Tribunal's award, seeking to correct errors in the calculation of the value of the Lajun shares. *See* Cross-Pet., Ex. 2, Decision on Rectification ¶ 9, ECF No. 15-3. On February 29, 2024, the Tribunal dismissed the Dominican Republic's request for rectification. *See generally id.* The Tribunal awarded Lee-Chin attorney's fees and costs and ordered the Dominican Republic to pay expenses related to the arbitration, totaling $133,857.92 in fees and costs. *See id.* ¶¶ 78–80.

C.    Procedural Background

On December 26, 2023, the Dominican Republic filed a petition for the Court to vacate that arbitral award under the FAA. *See generally* Pet. On March 21, 2024, Lee-Chin filed an opposition to the petition and a cross-petition to confirm, recognize, and enforce the award under the FAA. *See generally* Cross-Pet. On April 8, 2024, the Dominican Republic filed a consolidated reply to the opposition and cross-petition. *See generally* Petr.'s Consolidated Reply Support Petition Vacate Arbitral Award and Opp'n Resp.'s Cross-Pet. Confirm Arbitral Award ("Pet.'s Reply"), ECF No. 19. On April 19, 2024, Lee-Chin filed a reply in support of his cross-petition. *See generally* Michael Anthony Lee-Chin's Reply Supp. Cross-Pet. Confirmation, Recognition, Enforcement Arbitral Award ("Resp.'s Reply"), ECF No. 23. On July 26, 2024, Judge Kollar-Kotelly referred the matter to the undersigned for a Report and Recommendation. *See* Min. Order (July 26, 2024).

## II.    LEGAL STANDARD

"Article V of the New York Convention sets forth the exclusive grounds for refusal of recognition and enforcement of the award." *Republic of Argentina v. AWG Grp. Ltd.*, 211 F. Supp. 3d 335, 345 (D.D.C. 2016), *aff'd*, 894 F.3d 327 (D.C. Cir. 2018). Under Article V(1)(e), "[r]ecognition and enforcement of the award may be refused" if the award "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." N.Y. Convention Art. V(1)(e). When "the award is made in the United States, the parties may, through Article V(1)(e), seek vacatur of the arbitration award under the FAA provisions applicable to domestic awards in 9 U.S.C. §§ 10 and 11." *Republic of Argentina*, 211 F. Supp. 3d at 346. "Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting one." *Hall St. Assocs.*, 552 U.S. at 582. A motion to vacate can only

6

succeed where there is "clear and convincing evidence" of grounds under § 10. *Al-Harbi v. Citibank, N.A.*, No. 94-cv-2425, 1995 WL 450523, at *2 (D.D.C. July 17, 1995), *aff'd*, 85 F.3d 680 (D.C. Cir. 1996).

In determining whether to vacate or modify an award, courts must keep in mind that "[j]udicial review of arbitral awards is 'extremely limited.'" *Hill v. Wackenhut Servs. Int'l*, 971 F. Supp. 2d 5, 9 (D.D.C. 2013) (quoting *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006)). The FAA does not permit courts "to hear claims of factual or legal error by an arbitrator in the manner that an appeals court would review a decision of a lower court." *Affinity Financial Corp. v. AARP Financial, Inc.*, 794 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal citation and quotation omitted). There is an "emphatic federal policy in favor of arbitral dispute resolution," especially "in the field of international commerce." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (internal citation and quotation omitted). "Thus, [t]he showing required to avoid summary confirmation of an arbitration award is high, and a party moving to vacate the award has the burden of proof." *Republic of Argentina v. BG Grp., PLC*, 715 F. Supp. 2d 108, 116 (D.D.C. 2010) (internal citation and quotation omitted), *aff'd*, 572 U.S. 25, 34 (2014)).

## III.    DISCUSSION

### A.    Arbitrability

The threshold issue in this case is who has the power to decide whether an agreement to arbitrate existed and what level of deference should be given to them. "[U]nless the parties clearly and unmistakably provided otherwise, the question of whether the parties agreed to arbitrate must be decided by the court, not by the arbitrators." *Nat'l R.R. Passenger Corp. v. Bos. & Maine Corp.*, 850 F.2d 756, 759 (D.C. Cir. 1988) (emphasis omitted) (quoting *AT & T Techs., Inc. v. Commc'ns*

*Workers of Am.*, 475 U.S. 643, 649 (1986)). "On the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014). In cases where the parties have clearly and unmistakably delegated the question of arbitrability to the arbitrator, "the court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

*BG Grp., PLC v. Republic of Argentina* is instructive. 572 U.S. 25. There, the dispute-resolution provision said that "a dispute '*shall* be submitted to international arbitration' if 'one of the Parties so requests,' as long as 'a period of eighteen months has elapsed' since the dispute was 'submitted' to a local tribunal and the tribunal 'has not given its final decision.'" *Id.* at 35 (citing Art. 8(2) of the investment treaty) (emphasis added). The Supreme Court reasoned that the "text and structure of [this] provision [made] *clear* that it operate[d] as a procedural condition precedent to arbitration." *Id.* (emphasis added). The Supreme Court concluded that such conditions were for the tribunal, not the court, to interpret and apply. *See id.* at 35–36.

Here, the Treaty provides nearly identical language that clearly and unmistakably delegated the question of arbitrability to the arbitrator:

> Disputes between an investor of one Party and the other Party concerning an obligation of the latter under this Agreement in relation to an investment of the former which have not been amicably settled *shall*, after a period of three months from written notification of a claim, be submitted to the courts of that Party or to national or international arbitration.

Treaty at Annex III, Art. XIII(1) (emphasis added). The Dominican Republic argues that this language merely "identifies three fora for resolving disputes." Pet.'s Reply at 7. They reason that Paragraph 2 is more relevant because it states that "'the investor and the Party concerned in the

dispute *may* agree to refer the dispute' to international arbitration." *See id.* (quoting Treaty at Annex III, Art. XIII(2) (emphasis added)).

But the similarities between the language of the dispute-resolution provisions in *BG Grp.* and the Treaty mandate following the Tribunal's reading of Paragraph 1. *See* Partial Award ¶¶ 82–198. Paragraph 1 "determines *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all." *BG Grp., PLC*, 572 U.S. at 35; *see* Treaty at Annex III, Art. XIII(1). "[W]here, as here, the provision resembles a claims-processing requirement and is not a requirement that affects the arbitration contract's validity or scope, we presume that the parties . . . intended to give [the] authority [to interpret and apply a threshold provision in an arbitration contract] to the arbitrators." *Id.* at 43; *see* Treaty at Annex III, Art. XIII(1). Accordingly, the Court defers to the Tribunal's holding that Paragraph 1 "contains the expression of consent of the Contracting Parties . . . to submit the disputes referred to therein to one of the three mechanisms mentioned." Partial Award ¶ 134. This includes to arbitration. *See id.*

The Dominican Republic principally relies on *Granite Rock Co. v. Int'l Broth. of Teamsters*, in response. 561 U.S. 287 (2010). However, *Granite Rock* is inapposite. There, "neither party argue[d] that the arbitrator should decide" whether the dispute was arbitrable. *Id.* at 298 n.5. In fact, they agreed "it was proper for the District Court to decide" that question. *Id.* at 297. For that reason, the Court concluded that there was "no need to apply the rule requiring 'clear and unmistakable' evidence of an agreement to arbitrate arbitrability." *Id.* at 298 n.5. But here, the parties dispute who decides arbitrability. *See* Pet. at 24–25; Cross-Pet. at 18–19. And the Treaty

provides clear and unmistakable evidence of an agreement to arbitrate arbitrability.[2] *See supra* p. 8.

The parties' adoption of UNCITRAL's arbitration rule also independently provides "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 878–79 (D.C. Cir. 2021) (quoting *Chevron Corp. v. Ecuador*, 795 F.3d 200, 208 (D.C. Cir. 2015)). The treaty in *Chevron* provided that a party could submit a matter to arbitration "in accordance with the Arbitration Rules of the [UNCITRAL]." 795 F.3d at 207 (quoting BIT Art. VI(3)(a)(iii)). The language of the Treaty is similar. Specifically, Paragraph 2 of Article XIII of the Treaty provides that:

> Where the dispute is referred to international arbitration, the investor and the Party concerned in the dispute may agree to refer the dispute to an international arbitrator or *ad hoc* arbitration tribunal to be appointed by a special agreement or established under the Arbitration Rules of the [UNCITRAL].

Treaty at Annex III, Art. XIII(2). Under the UNCITRAL rules, "[t]he arbitral tribunal shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the arbitration clause," and "shall have the power to determine the existence or the validity of the contract of which an arbitration clause forms a part." UNCITRAL Arbitration Rules, G.A. Res. 31/91 art. 21 (Dec. 15, 1976). Accordingly, the Dominican Republic

---

[2] The Dominican Republic also cites a handful of cases that the Court similarly finds unpersuasive because their analysis is limited to non-FAA and non-international treaty contexts. *See* Pet.'s Reply at 3–8 (citing, *e.g.*, *Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 998 F.3d 449, 465 (D.C. Cir. 2021) (labor union dispute); *KenAmerican Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 99 F.3d 1161, 1163 (D.C. Cir. 1996) (labor dispute)). And the Dominican Republic offers no explanation of why cases in a different context with different statutory schemes/goals would apply here.

"consented to allow the arbitral tribunal to decide issues of arbitrability—including whether [Lee-Chin] had 'investments' within the meaning of the treaty." *Chevron*, 795 F.3d at 208.[3]

Separately, the "evidence of intent to submit arbitrability issues to arbitration may be found [not] only in arbitral agreements, [but also] in subsequent agreements reached by parties during an arbitration." *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 155 (2d Cir. 2021). In *Beijing Shougang*, the court noted that "at the start of the arbitral process, the [p]arties met and conferred on several procedural aspects of the arbitration" including "that the first phase of the arbitration would cover jurisdictional and liability disputes." *Id.* at 154. "In doing so, the [p]arties agreed to submit arguments as to the appropriate reach of the arbitrators' jurisdiction over [the petitioner's] claims under the Treaty to the arbitral tribunal." *Id.* at 147–48. Thus, regardless of what their treaty said, the petitioner "indisputably put the issue of the arbitrability of [its] claims to the arbitral tribunal when [it] consented . . . to the arbitration proceeding in two phases." *Id.* at 147.

Here, the Dominican Republic similarly submitted a request to bifurcate the proceedings with the jurisdictional phase occurring first. *See* Partial Award ¶ 34. The Dominican Republic made this request even after "it had already become clear that the key jurisdictional issue to be

---

[3] Article 21(1) sets forth the procedural rule that governs the tribunal's power to decide arbitrability. *See* UNCITRAL Arbitration Rules, G.A. Res. 31/91 art. 21 (Dec. 15, 1976). The Dominican Republic contends that it did not consent to the adoption of this rule because it maintained a general objection to the Tribunal's jurisdiction and agreed to adopt the UNCITRAL rules "solely for procedural purposes." Pet.'s Reply at 10 (emphasis omitted). But this general objection to jurisdiction is insufficient. "[S]imply stating a general reservation of rights with respect to arbitrability without in any way specifically objecting to the arbitrator's ruling on an issue submitted and briefed[] does not preserve [a party's] right to object to that ruling." *In re Arb. Between Halcot Navigation Ltd. P'ship & Stolt-Nielsen Transp. Grp.*, 491 F. Supp. 2d 413, 419 (S.D.N.Y. 2007) Negating such provisions requires objecting to the relevant *procedural* UNCITRAL rule. *See id.*

argued during the first phase was . . . a question clearly implicating 'arbitrability.'" *Beijing Shougang*, 11 F.4th at 148; *see* Partial Award ¶¶ 34–36. This demonstrates "'clear and unmistakable' evidence of the [Dominican Republic's] intent to arbitrate issues of arbitrability." *Beijing Shougang*, 11 F.4th at 148.

     B.    <u>Vacatur of the Award</u>

          1.    *<u>9 U.S.C. § 10</u>*

The Court may still vacate the award under 9 U.S.C. § 10. This provision "provide[s] the FAA's exclusive grounds for" vacatur. *Hall St. Assocs.*, 552 U.S. at 584. Those grounds include:

> (1) where the award was procured by corruption, fraud, or undue means; . . .
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4). The FAA "sharply limit[s] the judicial review of . . . the arbitrator, and restate[s] the longstanding rule that, if an arbitration award is within the submission, and contains the honest decision of the arbitrator, after a full and fair hearing of the parties, a court will not set the award aside for error, either in law or fact." *Andresen v. Intepros Fed., Inc.*, 15-cv-446, 2024 WL 4164660, at *12 (D.D.C. Sept. 12, 2024) (cleaned up). Courts are "not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). Instead, courts must uphold the award "even if it offered no explanation at all because the alternative, requiring a particular level of detail for every response to each party's

theories, would unjustifiably undermine the speed and thrift sought from arbitration proceedings." *Republic of Argentina v. AWG Grp. LTD.*, 894 F.3d 327, 338 (D.C. Cir. 2018) (internal citation and quotation omitted).

a.   *9 U.S.C. § 10(a)(4)*[4]

"It is not enough for [a petitioner] to show that the panel committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (citing *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)). They must show that the Tribunal "stray[ed] from interpretation and application of the agreement and effectively 'dispense[d its] own brand of industrial justice.'" *Id.* at 671 (quoting *Major League Baseball Players Assn. v. Garvey,* 532 U.S. 504, 509 (2001) (per curiam)). In other words, "only if the [Tribunal] act[ed] outside the scope of [its] contractually delegated authority—issuing an award that simply reflect[ed its] own notions of economic justice rather than drawing its essence from the contract—may a court overturn [its] determination." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (cleaned up).

The Dominican Republic argues that the Tribunal exceeded its authority because Lee-Chin did not qualify as an investor nor make any qualifying investments under the Treaty.[5] *See* Pet. at 28–34. But their argument ignores that the Court must "accord the 'narrowest of readings' to the excess-of-authority provision." *Contech Const. Prod., Inc. v. Heierli*, 764 F. Supp. 2d 96, 110 (D.D.C. 2011) (quoting *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1180 (D.C. Cir. 1991)). As such, the bar is low: a summary of the arbitrator's decisions from the record is sufficient

---

[4] The Court reviews the statutory bases for vacatur in the order the parties analyzed them.

[5] The Dominican Republic also argues that the Tribunal exceeded its authority by exercising jurisdiction when there was not an agreement to arbitrate. *See* Pet. at 28–34. This recycled argument fails for the same reasons as above. *See supra* III.A.

to show they properly interpreted the agreements. *See Oxford Health Plans LLC*, 569 U.S. at 570. For example, the Supreme Court in *Oxford* refused to vacate under § 10(a)(4) because the arbitrator's ruling (1) "recited the 'question of construction' the parties had submitted," (2) analyzed the question using the "arbitration clause's text[] (whether correctly or not makes no difference)," and (3) ruled, based on this analysis. *Id.*

Then the "sole question" here is "whether the [Tribunal] (even arguably) interpreted the parties' contract, not whether [it] got its meaning right or wrong[.]" *Id.* at 569 (cleaned up). The answer is yes. The Tribunal carefully considered the Treaty—its text, the *travaux préparatories*, and other similar treaties entered by the Dominican Republic and CARICOM states. *See* Partial Award ¶ 74, 209–19. The Tribunal also provided detailed reasoning for its decision that Lee-Chin was an investor and made qualifying investments. *See id.* ¶ 209–19. Specifically, the Tribunal found that the Treaty's broad definition of investments—"every kind of asset . . . though not exclusively"—inherently included indirect investments since it made no distinction between direct and indirect investments. *See* Partial Award ¶ 210–12. Relatedly, they rejected the argument that the absence of an explicit mention of indirect investments excluded them. *See* Partial Award ¶ 214–17. The Tribunal was further swayed by the fact that Lee-Chin owned virtually the entire investment with clear links to his person. *See id.* This mitigated any confusion or risk of concealment from his indirect investment. *See id.* In conducting this analysis, the Tribunal met the same standards as in *Oxford Health Plans*, foreclosing vacatur under Section 10(a)(4). *See* 569 U.S. at 572 (citing *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)).

b.    *9 U.S.C. § 10(a)(3)*

"The scope of review under § 10(a)(3) is similarly narrow." *Mesa Power Grp., LLC v. Gov't of Canada*, 255 F. Supp. 3d 175, 184 (D.D.C. 2017). "Section 10(a)(3) is focused on whether the tribunal refused to hear material evidence, or otherwise employed an improper procedure." *Id.* A court "may vacate an award only if [a tribunal]'s refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings." *Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716, 722 (D.C. Cir. 2008) (quoting *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 481 F.3d 813, 818 (D.C. Cir. 2007)) (internal quotation marks omitted).

The Dominican Republic argues that the Tribunal incorrectly conflated the issue of whether the Treaty covered indirect investment with the distinct issue of whether any such investments were actually made, in effect, granting a prejudgment on the issue without the opportunity to be heard. *See* Pet. at 34–35. But "[u]ltimately, all that is required [under § 10(a)(3)] is that the arbitrator grant the parties a fundamentally fair hearing [which] requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decision makers are not infected with bias." *White v. Four Seasons Hotel and Resorts*, 244 F. Supp. 3d 1, 5 (D.D.C. 2017) (quotation marks and citations omitted). Here, the Tribunal did just that. At both hearings, the parties "present[ed] detailed arguments about the pertinence and materiality" of whether Lee-Chin qualified as an investor who made qualifying investments. *White*, 244 F. Supp. 3d at 10; *see* Partial Award ¶ 37–38, 43, 46, 52; Final Award ¶ 22, 35, 37, 40, 65. For example, the Tribunal authorized leave for the Dominican Republic to incorporate new exhibits and a legal authority into the record and for Lee-Chin to comment on these items during the hearing. *See* Partial Award ¶ 49. Then, the Tribunal "determin[ed] what evidence [wa]s

relevant and what [wa]s irrelevant," and "[took] actions which . . . expedite[d] the proceedings." *Fairchild & Co. v. Richmond, F. & P. R. Co.*, 516 F. Supp. 1305, 1314 (D.D.C. 1981); *see* Partial Award ¶ 208–14. For example, the Tribunal determined that it was relevant that "Mr. Lee-Chin owns virtually the entire investment, and, regardless of what might be thought about how that investment was conceived and managed . . . it can hardly be doubted that the investment is closely linked to his person." Partial Award ¶ 217. The Dominican Republic made objections to these rulings which the Tribunal considered and ultimately rejected. *See* Partial Award ¶ 217–19. "Although [the Dominican Republic] may disagree with the outcome, the Court cannot find that it resulted from any [§ 10(a)(3)] vacatur-worthy deficiency in the proceedings." *White*, 244 F. Supp. 3d at 10.

### c.   *9 U.S.C. § 10(a)(1)*

"A claim under § 10(a)(1) requires [the petitioner] to 'meet three cumulative conditions.'" *Petruss Media Grp., LLC v. Advantage Sales & Mktg., LLC*, No. 22-cv-3278, 2023 WL 5507306, at *12 (D.D.C. Aug. 25, 2023) (quoting *ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*, 961 F. Supp. 2d 245, 254 (D.D.C. 2013)). First, they "must demonstrate by clear and convincing evidence that [the opposing party] actually engaged in fraudulent conduct or used undue means during the course of the arbitration." *ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*, 961 F. Supp. 2d 245, 254 (D.D.C. 2013). Second, they "must show that the fraud could not have been discovered before or during the arbitration through the exercise of reasonable diligence." *Id.* Finally, "the alleged misconduct 'must materially relate[] to an issue in the arbitration.'" *Id.* (citation omitted).

Under the first prong, the Dominican Republic argues that: (1) Lee-Chin's investments into the Landfill violated its laws; and (2) that Lee-Chin withheld documents and submitted questionable documents related to his fraudulent investments. *See* Pet. at 35; Pet.'s Reply at 21.

The Court will not consider the first allegation. That alleged "fraudulent conduct" did not occur "during the course of the arbitration." *ARMA*, 961 F. Supp. 2d at 254. Thus, it is not actionable under § 10(a)(1). *See id.*

The second allegation also fails. "[O]rdinary misconduct will not suffice; the alleged fraudulent acts must have been so prejudicial that they effectively denied the opposing party a fundamentally fair hearing." *Petruss Media Grp.*, 2023 WL 5507306, at *12 (citation omitted) (internal quotation marks omitted). For instance, in *ARMA* a party submitted allegedly unauthorized documents and made misrepresentations; however, the court still found this insufficient to deny a "fundamentally fair hearing" because the tribunal gave the opposing party opportunities to respond and raise concerns. *See* 961 F. Supp. 2d at 260. Similarly, the Dominican Republic argued at the hearing that it needed more discovery to determine the source of Lee-Chin's supposedly fraudulent documents. *See* Final Award ¶ 66. The Tribunal explicitly invited both parties to explain why this discovery should or should not be provided. *See id.* In so doing, the Tribunal gave the Dominican Republic ample opportunity to be heard. *See id.* Only after analyzing both parties' briefing on this issue did the Tribunal deny the additional discovery. *See* Final Award ¶ 70. The Tribunal then explicitly analyzed these accusations of fraud. *See e.g.*, Final Award ¶ 188. The Tribunal's analysis mirrors that in *ARMA* and is thus sufficient. *See* 961 F. Supp. 2d at 260.

As to the second prong, the Dominican Republic "raised the[] . . . allegations of fraud" to the Tribunal. *Thermal Dynamic Int'l, Inc. v. Safe Haven Enters., LLC*, No. 13-cv-721, 2016 WL 3023983, at *8 (D.D.C. May 25, 2016); *see* Final Award ¶ 163–64, 167. The Tribunal explicitly considered those arguments, ultimately denying them. *See* Final Award ¶ 188. "[W]here the fraud or undue means is not only discoverable, but discovered and brought to the attention of the arbitrators, a disappointed party will not be given a second bite at the apple." *ARMA*, 961 F. Supp.

2d at 258 (internal citation and quotation omitted); *see generally* Cross-Pet., Ex. 5, Procedural

Order No. 10, ECF No. 15-6.

As to the third prong, courts require "*proof* that the misconduct or fraud had some bearing

on the arbitrator's final decision." *ARMA*, 961 F. Supp. 2d at 254–55 (emphasis added). In *ARMA*,

the court found no material impact on the final decision because that decision was based on

contract interpretation rather than the allegedly fraudulent evidence. *See id.* at 260–61. Similarly,

the Tribunal's decision was not based on the allegedly fraudulent documents. Final Award ¶ 185.

Indeed, the Tribunal explicitly said that even with sufficient evidence of tax or document fraud, its

outcome would not change. *See id.* Thus, vacatur under this prong is foreclosed. *See ARMA*, 961

F. Supp. 2d at 254–55.

2.     *Article V(2)(b) of the New York Convention*

The D.C. Circuit has recognized that an arbitral award obtained through fraud would be

contrary to U.S. public policy under Article V(2)(b) of the New York Convention. *See Enron*

*Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*, 844 F.3d 281, 286–87 (D.C. Cir. 2016).

However, that exception "is construed narrowly, and it requires [the petitioner] to meet the heavy

burden of proving that the arbitral award tends clearly to undermine the public interest, the public

confidence in the administration of the law, or security for individual rights of personal liberty or

of private property." *Anatolie Stati v. Republic of Kazakhstan*, 302 F. Supp. 3d 187, 199 (D.D.C.

2018) (internal citation and quotations omitted). "When determining whether an arbitration award

is so tainted by fraud that its recognition would violate U.S. public policy under Article V(2)(b) of

the New York Convention, courts have applied the three-prong test used to determine whether an

award should be vacated as fraudulently obtained under Section 10(a) of the FAA." *Id.*

In its reply, the Dominican Republic moves under the New York Convention's public-policy exception to vacate the award for the same reasons of fraud cited above. *See* Pet.'s Reply at 22. And for the same reasons as above, the Court finds the award was not so tainted by fraud that its recognition would violate the New York Convention. *See supra* III.B.1.c; *Stati*, 302 F. Supp. 3d at 208 (rejecting public-policy fraud exception where the court had already found no fraud under § 10(a)).

C.    Modification of the Award

Next, the Dominican Republic urges the Court to modify the award under 9 U.S.C. § 11. *See* Pet. ¶ 67. Section 11 empowers a court to modify an arbitral award "only if it finds that the [a]ward contains a 'material miscalculation of figures,' . . . the arbitrators had decided a matter that was 'not submitted to them,' or that the [a]ward 'is imperfect in matter of form not affecting the merits of the controversy.'" *Republic of Argentina v. BG Grp. PLC*, 715 F. Supp. 2d at 125 (D.D.C. 2010) (citations omitted) (quoting 9 U.S.C. § 11).

The Dominican Republic alleges three calculation errors: the Tribunal's discounted cashflow ("DCF") calculation; the value of Lajun shares; and a failure to account for Lajun's debts.[6] *See* Pet. at 42-45. However, a miscalculation only merits award modification if it is a

---

[6] The Court primarily analyzes the first allegation because it is the primary one made by the Dominican Republic. *See* Pet. at 37–39. The other two allegations are specious.

Regarding Lujan's shares, the Dominican Republic argues that the Tribunal erred in valuing them when it used expected cash flows through 2034. *See* Pet. at 39–40. They argue that the cash flows should have instead ended in 2025 because that is when the Landfill is expected to reach full capacity, thereby stopping subsequent profitability. *See* Pet. at 39. But according to one report, the landfill could be profitable until 2034. *See* Decision on Rectification ¶ 48. The Tribunal relied on both parties' positions in its rectification decision, explaining that it "considered all the allegations made by both Parties" when coming to its valuation determination. Decision on Rectification ¶ 69. Reliance on a prepared report separates this valuation determination from the type of clear

"mathematical error . . . on [its] face." *Republic of Argentina*, 715 F. Supp. 2d at 125 (quoting *Grain v. Trinity Health, Mercy Health Servs., Inc.*, 551 F.3d 374, 378 (6th Cir. 2008)).

Here, the parties and Tribunal agreed to use the DCF model as the general approach for valuing the shares. *See* Decision on Rectification ¶ 26; *see also* Final Award ¶ 558. However, they did not agree on a specific discount rate to be applied within this model. *See* Final Award ¶ 528. Regardless, a tribunal is "not bound by" a methodology of calculation even when the parties agree on it. *Barranco v. 3D Systems Corporation*, 734 F. App'x 885, 889 (4th Cir. 2018). As such, the Tribunal chose a discount rate different from those proposed by either party. *See* Final Award ¶ 557.

The Dominican Republic characterizes the Tribunal's use of a different discount rate as a miscalculation. *See* Pet. ¶ 69. But challenging the underlying method of calculating the award is not a mathematical error. *See, e.g.*, *Republic of Argentina*, 715 F. Supp. 2d at 125. Moreover, this case is different from cases where courts have found calculation errors. For instance, In *Wells Fargo Clearing Servs., LLC v. Polun*, the court modified an arbitral award due to a clear mathematical error: it overstated the interest owed on two promissory notes that were the subject of the award. No. 20-cv-3787, 2021 WL 5040335 (D. Md. Oct. 29, 2021). Similarly, in *Transnitro, Inc. v. M/V Wave*, the court found a "material mistake" where arbitrators *unknowingly* awarded interest on a bond without knowing that the owner was already earning interest on the collateral

---

"mathematical error" permitting modification. *See, e.g.*, *Grain v. Trinity Health, Mercy Health Servs., Inc.*, 551 F.3d 374 (6th Cir. 2008).

Regarding Lujan' debts, the Tribunal clarified that it need not take that into consideration because the discount rate they applied does not rely on debt. *See* Decision on Rectification ¶ 50–53. Again, this is a merits-based argument of which the Tribunal properly analyzed and dispensed. *See Libya v. Strabag SE*, 21-cv-7128, 2022 WL 1715989 (D.D.C. May 27, 2022).

securing that bond, resulting in a potential double recovery. 943 F.2d 471, 474 (4th Cir. 1991) (refusing to modify award only because the errors were not "the fault of the arbitrators"). But in *Libya v. Strabag SE*, the court refused to modify an award under Section 11 even where the tribunal *knowingly* allowed for "double recovery" of unreduced damages and advance payments. 21-cv-7128, 2022 WL 1715989, at *2 (D.D.C. May 27, 2022). This was because § 11(a) is limited to correcting "obvious numerical gaffe[s] in computing the award, not for relitigating whether the arbitrator made a mistake on the merits." *Id.* (internal citation and quotations omitted).

Here, the Tribunal did not make a mathematical error in applying its chosen formula. Rather, it made a deliberate choice to use a different parameter (the discount rate) within the agreed-upon DCF model. *See* Final Award ¶¶ 557–58. Such decision was well within the Tribunal's authority. *See Libya*, 2022 WL 1715989 (holding that decisions on the merits are within the Tribunal's proper scope). Thus, the Court will not modify the award.[7] *See id.*

---

[7] The Dominican Republic argues that these miscalculations are another reason to vacate the award under 9 U.S.C. § 10(a)(4) because the calculations are "irrational." *See* Pet.'s Reply at 15–16. Some courts have vacated awards on this basis. *See, e.g.*, *Kyocera Corp. v. Prudential-Bache Trade Servs.*, 341 F.3d 987, 997 (9th Cir. 2003) ("We have held that arbitrators 'exceed their powers' in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational.'"). But the Tribunal's decision does not rise to that level. Every party assumes "[t]he risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law." *Id.* at 1003. Choosing a different discount rate is, at worst, an imperfect construction of the law and does not "display a manifest disregard for the law." *Id.* at 1002–03; *see also Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 91–93 (2d Cir. 2008) (finding no manifest disregard where arbitrators considered but ultimately rejected evidence of maritime custom and usage in interpreting whether silent arbitration clause permitted class arbitration), *rev'd on other grounds*, 559 U.S. 662 (2010). Furthermore, this Court must consider the high deference afforded arbitrators under § 10(a)(4). *See, e.g.*, *Republic of Argentina*, 715 F. Supp. 2d at 116 ("[T]he showing required to avoid summary confirmation of an arbitration award is high, and a party moving to vacate the award has the burden of proof.").

D.    Attorneys' Fees

"Neither the FAA nor the New York Convention . . . expressly or impliedly addresses whether courts may award attorney fees." *GPGC Ltd. v. Gov't of Republic of Ghana*, No. 24-cv-169, 2024 WL 4263833, at *1 (D.D.C. Sept. 23, 2024). Both parties agree on this. *See* Cross-Pet. at 44; Pet.'s Reply at 23.

Despite this, Lee-Chin argues the Court should use its "inherent power" as well as Federal Rule of Civil Procedure 11 to grant leave to file a motion to award fees and costs as a sanction for "frivolous re-litigation." *See* Cross-Pet. at 44. But "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).

Alternatively, Lee-Chin asks the Court for leave to file more briefing on whether the Dominican Republic "acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Cross-Pet. at 44 (quoting *Concesionaria Dominicana de Autopistasy Carreteras, S.A. v. Dominican State*, 926 F. Supp. 2d 1, 2 (D.D.C. 2013). But the Dominican Republic's conduct does not constitute bad faith. *See, e.g.*, *GPGC Ltd.*, 2024 WL 4263833, at *1–2. For instance, the Dominican Republic has not "unjustifiably refused to abide by the arbitral award." *Concesionaria Dominicana de Autopistasy Carreteras, S.A. v. Dominican State*, 926 F. Supp. 2d 1, 3 (D.D.C. 2013). Neither has it "not participated in the litigation at any point after being served." *GPGC Ltd.*, 2024 WL 4263833, at *2. Rather, the Dominican Republic exercised its right to bring a claim under the FAA. Further briefing is unnecessary.

## IV.    RECOMMENDATION

A "court shall confirm the [arbitral] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9

U.S.C. § 207.  "[T]o obtain confirmation of an award, the New York Convention requires that the applicant shall supply: '(a) [t]he duly authenticated original award or a duly certified copy thereof;' and '(b) [t]he original agreement referred to in article II or a duly certified copy thereof.'" *Republic of Argentina*, 211 F. Supp. 3d at 363 (D.D.C. 2016) (quoting New York Convention, art. IV(1)). For the reasons stated above, the Court finds no grounds for vacatur or modification. The Respondent has complied with the other requirements of confirmation. *See generally* Cross-Pet. (providing copies of the awards and original agreement). Thus, the Court recommends DENYING the Petition and GRANTING the Cross Petition's request to confirm, recognize, and enforce the award while DENYING its request for leave to file a motion for attorneys' fees.[8]

Date: February 7, 2025

_____

ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

---

[8] The parties are hereby advised that, under the provisions of Local Rule 72.3(b) of the U.S. District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).